**GENERAL ELECTRIC CO.**

v.

**MASTERS MAIL ORDER CO. OF WASHINGTON, D. C., Inc.**

United States District Court
S. D. New York.

July 28, 1954.

798

White & Case, New York City, for plaintiff. Edgar E. Barton, Melvin L. Milligan, II, and Howard J. Aibel, New York City, of counsel.

Joseph F. Ruggieri, Brooklyn, N. Y., for defendant. Thurman Arnold, Arnold, Fortas & Porter, Washington, D. C., of counsel.

McGOHEY, District Judge.

This is an action for injunctive relief and damages based on two claims. The first is that the defendant, unlawfully and to the plaintiff's irreparable damage, willfully and knowingly advertises, offers for sale, sells and delivers the plaintiff's products in New York to New York residents for less than the retail prices fixed by the plaintiff in contracts made pursuant to the fair trade laws of New York,[1] New Jersey and other states. The second is that the defendant, by its conduct as alleged in the first claim, is maliciously interfering with the plaintiff's "lawful distribution system and the maintenance of its retail fair trade program in New York, New Jersey" and the

---

[1]. N. Y. General Business Law, § 369–a et seq., McK.Consol.Laws, c. 20, commonly known as the "Feld-Crawford Act." The laws of the other states are substantially similar to New York's.

other states which have similar fair trade laws.

The parties are respectively corporations of New York and Maryland and the amount in controversy exceeds $3,000.

Three motions are before the Court. They will be considered in the following order: first, the defendant's motion to set aside service of the complaint and dismiss it for lack of jurisdiction of the defendant; second, its motion for summary judgment on the grounds that there is no issue of material fact and that the complaint fails to state a claim on which relief can be granted; third, the plaintiff's motion for preliminary injunction. For the reasons hereafter stated, all the motions are denied.

Obviously it is necessary to consider first the defendant's challenge to the jurisdiction. It is conceded that process was served in this district on a proper officer of the defendant. It is contended, however, that this was ineffectual because the defendant is not "doing business" in New York, within the New York decisions, which it is urged control here.

From the affidavits and the concessions on argument and in the briefs, the Court finds the following facts as to the service of process.

The defendant [hereafter called Masters of Washington] has its principal place of business in Washington, D. C. It has not signed a "fair trade" contract with the plaintiff. Although not qualified to do business in New York, it is concededly an affiliate of Masters, Inc. [hereafter called Masters of New York], a New York corporation. The stock ownership of both corporations is the same. The same persons apparently serve as officers of both corporations and they make their offices at Masters of New York. In any event, Stephen Masters and Anthony Masters are respectively President and Vice President of both and Vincent Bongiorne, defendant's Treasurer on whom process was served at the office of Masters of New York, is also an officer of the latter. Masters of Washington was incorporated in March 1954. At about that time or just shortly before, Masters of New York had been enjoined by the New York Supreme Court from selling the plaintiff's products at prices below those fixed in contracts made by the plaintiff pursuant to New York's fair trade statute. Promptly after its incorporation, Masters of Washington opened its store in the District of Columbia which has no fair trade law. Masters of Washington, like its New York affiliate, is a discount house. It does an over-the-counter business in Washington and from there it also conducts a mail order business throughout the United States. In both branches of its business it resells the plaintiff's products for less than the retail prices fixed by the plaintiff in "fair trade" contracts made with others in New York and other fair trade states.[2] Masters of Washington regularly circularizes New York residents by mail and regularly, at its own expense, ships the plaintiff's "fair traded" products into New York to purchasers located there. Mail orders must be accompanied by the full amount of the defendant's price for each article ordered and are subject to acceptance by the defendant in Washington, D. C. Masters of Washington's mail order blanks are kept on hand at the sales room of Masters of New York; at least some of such blanks are attached to larger sheets containing printed matter which clearly shows the affiliation of Masters of Washington with Masters of New York. At least "on occasion," and perhaps regularly, the latter's employees when asked by customers about lower prices on plaintiff's products displayed by Masters of New York have informed them that they can communicate with Masters of Washington and have given them the latter's mail order blanks. In at least one instance, an employee of Masters of New York wrote in the name of a prospective New York purchaser on

---

2. The plaintiff concedes that the fair trade laws of New York and other states cannot reach the defendant's over-the-counter sales made in Washington, and so in this action it does not seek to enjoin them.

an order blank and mailed it to the purchaser to be filled in, signed and forwarded to Masters of Washington with the requisite amount.

■ There is dispute as to whether title to articles sent from Washington passes there as the defendant contends, or on delivery to the purchaser in New York as the plaintiff contends. The presumption, stressed by the plaintiff, which usually arises from the seller's payment of shipping charges, may perhaps be overcome here by facts alleged by the defendant, if established. Among these is its requirement, said to be uniformly enforced, of full payment in advance and its alleged policy of accepting returns and making refunds within 30 days of purchase. The argument assumes that this latter policy is well known to the defendant's customers and thus becomes a term of their contracts of purchase and sale. Decision as to where title passes cannot be made on the papers now before the Court. These indicate that perhaps not all purchases are made on identical terms. Enough appears, however, to suggest the possibility that in some instances at least title may not pass until delivery in New York. However that may be, the place where title passes is hardly crucial on the question of service. The facts and circumstances set forth above are, I think, sufficient to found the jurisdiction. They show sufficient contacts with, and activities in New York and their effects are of such immediate and serious consequence to New York's interests, that "traditional notions of fair play and substantial justice" are not offended by holding Masters of Washington to be present here and requiring it to defend in this jurisdiction the claims asserted in this action.[3]

■ The defendant strongly insists that, under the decision of the Court of Appeals for this circuit in Bomze v. Nardis Sportswear, the question of jurisdic-

tion in this diversity case must be determined in accordance with the decisions of the courts of New York; and that under those decisions the service here cannot stand. In the first place, I think the defendant misreads the Bomze decision. That was a case which had been commenced in the state court and later removed on diversity grounds to this court by the defendant, who then moved here to set aside the service of process. Of necessity then, this Court at the outset had to pass on the defendant's "challenge [to] *the validity of the service in the state court*" [emphasis supplied], the right to which was not lost by removal. And that, of course, as the Court said, raised as the first question, "whether the service was valid under New York decisions." The instant action however was commenced in this court and service was made in accordance with Rule 4(d) (3) of the Federal Rules, 28 U.S.C.A. Accordingly, whether the service in this case was valid is a question of federal law.[4] In any event, Judge Learned Hand's discussion in Bomze of the New York decisions shows, I think, that on the facts of this case the New York courts would probably reach the same conclusion arrived at here.

Accordingly the motion to set aside the service and to dismiss the complaint will be denied.

■ The motion for summary judgment on the ground that there is no genuine issue as to any material fact is not well founded. There is clearly an issue of fact as to whether or not the defendant is advertising in New York. This indeed is demonstrated by Anthony Masters' affidavit. Moreover there are issues of fact as to whether in any instances title passes in New York; and whether the defendant, either directly or through Masters of New York, is offering to sell in New York. On all these and other subsidiary issues the plaintiff

3. Travelers Health Ass'n v. Com. of Virginia, 1950, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154; International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; Bomze v. Nardis Sportswear, 2 Cir., 165 F.2d 33.

4. Jacobowitz v. Thompson, 2 Cir., 141 F.2d 72.

is entitled to a trial. If it should be there proved that the defendant is advertising, offering for sale or selling in New York, there will probably be little question as to whether these activities are carried on "knowingly." Because, it appears quite clearly from the argument and briefs that Masters of Washington so conducts its mail order business as to take the fullest advantage of the absence of a fair trade law in the District of Columbia, consistent with the McGuire Act as the defendant construes it.

There is no doubt that in the absence of the Congressional authority granted in the McGuire Act,[5] Masters of Washington being a "non signer" could not be bound, under any fair trade law, by the terms of contracts made by others pursuant thereto. That was settled in 1951 when the Supreme Court ruled in Schwegmann Bros. v. Calvert Distillers Corp.[6] that the Miller-Tydings Act[7] did not, as had been generally supposed, authorize the states to compel retailers to comply with the price-fixing provisions in contracts to which they were not parties or by which they had not consented to be bound. Thereafter, however, as a result of that and another related decision,[8] Congress passed the McGuire Act which became law on July 14, 1952. This Act amended the Federal Trade Commission Act in order, as the preamble[9] states, " * * * to protect the rights of States under the United States Constitution to regulate their internal affairs and more particularly to enact statutes and laws, and to adopt policies, which authorize contracts and agreements prescribing minimum or stipulated prices for the resale of commodities and to extend the minimum or stipulated prices prescribed by such contracts and agreements to persons who are not parties thereto. It is the further purpose of this Act to permit such statutes, laws, and public policies to apply to commodities, contracts, agree-

ments, and activities in or affecting interstate or foreign commerce." The Act exempted from the Antitrust and Federal Trade Commission laws, contracts fixing the resale prices of certain specified kinds of commodities when such controls "are lawful as applied to intrastate transactions under any statute, law, or public policy now or hereafter in effect in any State * * * in which such resale is to be made, or to which the commodity is to be transported for such resale." Moreover it exempted from the Antitrust and Federal Trade Commission laws the exercise or enforcement of rights created by state legislation which makes it unfair competition actionable by the damaged party for anyone, whether or not he is a signer of such a price-fixing contract, willfully and knowingly to advertise, offer for sale or sell commodities covered by such contracts for less than the prices fixed therein. And it declared that neither the making of such contracts nor the exercise or enforcement of such rights "shall constitute an unlawful burden or restraint upon, or interference with, commerce."

■■ It is in the light of that statute that we must consider the defendant's motion for summary judgment on the ground that the complaint fails to state a claim on which relief can be granted. The defendant argues that Congress clearly intended by the McGuire Act to leave retailers in non-fair trade states free and protected from the reach of the fair trade laws of other states, and that the plaintiff here is attempting to apply New York's Feld-Crawford law extraterritorially to the defendant's activities in the District of Columbia, a free trade area. Passing for the moment the question of construction, the defendant clearly misapprehends the plaintiff's claims as pleaded in the complaint, and the status of the complaint on this motion. The complaint alleges, first, that the defend-

5. 15 U.S.C.A. § 45.

6. 1951, 341 U.S. 384, 71 S.Ct. 745, 95 L. Ed. 1035.

7. 15 U.S.C.A. § 1.

8. Sunbeam Corp. v. Wentling, 1951, 341 U.S. 944, 71 S.Ct. 1012, 95 L.Ed. 1369.

9. 66 Stat. 631.

ant is committing acts "in New York" which violate that state's law and that by so doing it is committing "in New York" an act of unfair competition as defined in the Feld-Crawford law; second, that by this conduct the defendant is maliciously interfering with plaintiff's "lawful distribution system," etc. These allegations, which must be deemed admitted for the purpose of this motion, clearly state claims on which relief can be granted, unless the effect of the McGuire Act is to permit a retailer located in a non-fair trade state who is a "non signer" to violate with impunity *in a fair trade state,* the latter's fair trade law. The defendant, to be sure, casts the argument in terms of protecting the non-fair trade state from domination by the fair trade state. But that is a problem which need not trouble us, because it is not posed by this complaint. It is unnecessary and indeed, in the absence of more facts than this meagre record presents, it would be unwise to undertake to define the precise boundaries of the exemptions and authority granted to the states by the McGuire Act. It is sufficient here to say that, from its preamble and its terms, the Act does not leave Masters of Washington free from the consequences of its acts done in New York in violation of New York's law. This seems to be too clear to require or justify resort to legislative history. However since the de-

fendant, both in argument and briefs, has strongly stressed this history, all of the Congressional reports [10] and debates [11] have been read and considered. The study however has not persuaded me that the statute leaves the defendant free from suit on the claims pleaded in this complaint.

Accordingly, the motion for summary judgment is, on both grounds, denied.

 There remains plaintiff's motion for a preliminary injunction. This is a case of first impression involving a problem of statutory construction which ought not be attempted without a full consideration of all relevant facts which may be developed at the trial. It is not at all certain now, nor is there now even probable cause for assuming, that plaintiff will necessarily prevail.[12] Moreover the irreparable harm which it is alleged will be done to the plaintiff, a large national organization with distributors throughout the United States, by the comparatively inconsequential transactions of defendant is not sufficient to counterbalance what amounts in effect to the practical destruction of defendant's small mail order business.[13]

Accordingly, the motion for preliminary injunction is denied.

Separate orders on each motion are to be settled.

10. House Report No. 1437, 82nd Congress, 2nd Session, Feb. 27, 1952; Senate Report No. 1741, 82nd Congress, 2nd Session, June 12, 1952.

11. Hearings before a Subcommittee of the Committee on Interstate and Foreign Commerce, House of Representatives, 82nd Congress, 2nd Session, on H.R. 5767, Feb. 1952; Hearings before the Committee on Interstate and Foreign Commerce, United States Senate, 82nd Congress, 2nd Session, on H.R. 5767, June, 1952; House Debate on H.R. 5767,

98 Cong.Rec. 4900, 4933, 4956; Senate Debate on H.R. 5767, 98 Cong.Rec. 8616, 8716, 8814, 8819, 8865, 8881, 8892.

12. Hall Signal Co. v. General Railway Signal Co., 2 Cir., 1907, 153 F. 907; Atlantic & Gulf West Coast v. U. S., D.C.S.D.N.Y., 1950, 90 F.Supp. 554; Zwack v. Kraus Bros. & Co., Inc., D.C.S.D.N.Y., 1951, 97 F.Supp. 719.

13. Yakus v. U. S., 1944, 321 U.S. 414, 440, 64 S.Ct. 660, 88 L.Ed. 834; Durkin v. John Hancock Mutual Life Ins. Co., D.C. S.D.N.Y., 1950, 92 F.Supp. 893.