**SUNBEAM CORPORATION, Plaintiff,**

v.

**MASTERS, Inc., Defendant.**

United States District Court
S. D. New York.

Aug. 21, 1954.

**156**

Rogers, Hoge & Hills, New York City, for plaintiff, Herman T. Van Mell, Chicago, Ill., Francis P. Kelly, New York City, of counsel.

Joseph F. Ruggieri, Brooklyn, N. Y., for defendant, Thurman Arnold, Washington, D. C., of counsel.

WEINFELD, District Judge.

Plaintiff petitions that defendant be adjudged in contempt for violating the injunctive provisions of a final decree in this action. Plaintiff is a manufacturer of electrical household appliances which are sold under its general trade mark "Sunbeam" and an additional trade mark for specific items such as "Coffeemaster", "Mixmaster" and "Shavemaster". Its business is very substantial. In the sale of its appliances in New York

plaintiff has availed itself of the New York Fair Trade Law, commonly known as the Feld-Crawford Act [1], by making contracts with retailers binding the latter not to advertise, offer for sale or sell articles covered by the contracts for less than the minimum prices prescribed by plaintiff in its schedules. Defendant, a retailer in the City of New York, is a discount house which sells various household commodities including electrical appliances manufactured by plaintiff and bearing its trade marks. Under date of March 1, 1950, defendant entered into a fair trade agreement with plaintiff.

On March 28, 1950 plaintiff instituted this action for an injunction, charging defendant with violation of plaintiff's fair trade contracts with defendant and other dealers in the State of New York. On consent of the parties, a final decree was entered on November 24, 1950. Plaintiff claims on the present application that defendant has violated the following provision of the final decree:

" 3. That the defendant, its respective officers, employees, servants, agents and attorneys, and all persons in active concert or participation with them, be and hereby are permanently enjoined and restrained from advertising, offering for sale or selling any commodity bearing, or the label of which bears, plaintiff's trade-mark or name at prices less than those stipulated in plaintiff's aforesaid fair trade contracts with retailers of electric appliances in the State of New York at prices less than the minimum retail prices from time to time set forth in plaintiff's current retail price list furnished by plaintiff to defendant while such fair trade contracts are in force and effect."

By order entered on November 2, 1953 defendant has heretofore been adjudged guilty of civil contempt for violating this decree and directed to pay a substantial sum. The order specified that it disposed of all violations up to the date of

1. New York General Business Law, § 369–a et seq., McK.Consol.Laws, c. 20, L.1935, c. 976, re-enacted L.1940, c. 195.

its entry "but in the event of future violations of the order of this court of November 24th, 1950, petitioner may apply for further relief." The order of November 2, 1953 also contained a representation by defendant that "it will respect and abide by said injunctive order of this court."

The present proceeding in which plaintiff asserts that defendant has again violated the injunction arises out of occurrences since the order of November 2, 1953. In March, 1954 the principals of the defendant organized in Maryland a corporation known as Masters Mail Order Co. of Washington, D. C., Inc., which will be referred to as Masters Mail Order House. The stock ownership of Masters Mail Order House and defendant is the same and both companies have substantially the same officers. Stephen Masters is the president and Anthony Masters is the vice-president of each corporation. Masters Mail Order House has a store in Washington, D. C. from which, in addition to an over the counter business, it also fills mail orders. Some of the orders so filled originate in New York and represent sales of plaintiff's products at less than the retail prices established by plaintiff in its fair trade contracts with New York retailers. The circumstances surrounding the inception and the filling of these orders and the impact in New York of the operations of Masters Mail Order House form the basis of the charge of contempt now before the court.

Masters Mail Order House has, through a circular or "flyer" mailed from Washington, D. C. to residents in New York and other states, offered plaintiff's articles at cut prices. Masters Mail Order House has in this fashion circularized, automatically and without solicitation, on their part, defendant's New York customers who hold so-called discount or identification cards. In addition, order blanks of Masters Mail Order House are available at defendant's New York store and have there been supplied to prospective customers with instructions that they be sent to Masters Mail Order House in Washington. The order blank states that it is subject to acceptance by Masters Mail Order House in Washington, D. C. Though at first Masters Mail Order House made shipments on both a prepaid and a C.O.D. basis, it is stated that it no longer ships unless it has received prior payment. Plaintiff claims that defendant has violated the injunction by:

1. Organizing and operating Masters Mail Order Co. of Washington, D. C. Inc. for the express purpose of evading the injunction;

2. Turning over its list of New York customers to that corporation;

3. Causing Masters Mail Order Co. to advertise Sunbeam appliances to defendant's New York customers at cut prices;

4. Furnishing customers in its New York store with order blanks to be sent to the Masters Mail Order Co. in Washington;

5. Referring customers in its New York store to the Washington store; and

6. Selling Sunbeam appliances to customers in New York, through the Washington store, at substantially cut prices.

The gist of plaintiff's grievance is, then, that defendant has created and used Masters Mail Order House as a vehicle through which to circumvent the injunction in the final decree.

It would be superfluous to restate here the development of fair trade legislation, for its complete history with references to the relevant decisions is found in the recent opinion of the New York Court of Appeals in General Electric Company v. Masters, Inc., 307 N.Y. 229, 120 N.E. 2d 802.

There is no fair trade statute in the District of Columbia. Defendant's position is, in substance, this: Masters Mail Order House is a separate corporate entity which has the right to conduct its mail order business in Washington; no fair trade statute being in effect in the District of Columbia it may freely sell there the plaintiff's trade marked appliances for less than the prices estab-

lished by plaintiff's fair trade agreements, and, in the absence of an explicit federal statutory prohibition, may further ship the appliances at such prices into states, including New York, where fair trade prices prevail. I find no occasion to pass on this contention because, in my opinion, it is academic here. Plaintiff is not proceeding against Masters Mail Order House but against the defendant and it attacks the propriety of defendant's activities. Of course if the offenses imputed to defendant, however committed, are not forbidden by the injunction, their commission cannot constitute a contempt.

■ On the authority of Sunbeam Corp. v. Wentling, 3 Cir., 185 F.2d 903, reversed 341 U.S. 944, 71 S.Ct. 1012, 95 L.Ed. 1369, modified 3 Cir., 192 F.2d 7, defendant argues that the injunction in the final decree of November 24, 1950 never extended to interstate commerce. This is a completely untenable position, for the defendant here was proceeded against as a signer of a fair trade agreement whereas the defendant in the Wentling case was a non-signer. Schwegmann Bros. v. Calvert Distillers Corp., 341 U.S. 384, 71 S.Ct. 745, 95 L.Ed. 1035,[2] held merely that under the Miller-Tydings Act, State fair trade laws could not be invoked against a non-signer in respect of transactions in interstate commerce. It neither held nor suggested that the Miller-Tydings Act was inapplicable to the interstate transactions of a contract signer. Not alone was the final decree in this action made before the decision in the Wentling case had been rendered, but at that time there was no question of the applicability of the Miller-Tydings Act to a contract signer. Finally, as the New York State Court of Appeals noted, the Wentling

case "was decided prior to the MacGuire Act's enactment. That the statute was designed to alter the Wentling rule so as to open all interstate commerce to the operation of State fair trade acts, appears from the statutory language as aforesaid, from its legislative history and from judicial decision, Sunbeam Corp. v. McMillan, D.C., 110 F.Supp. 836." General Electric Company v. Masters, Inc., supra, 307 N.Y. at page 240, 120 N.E.2d at page 805. Significantly, the MacGuire Act was in full force and effect in November 1953 when the defendant represented that it would "respect and abide by said injunctive order of this Court [decree of November 24, 1950]" and all the acts now complained of occurred after the effective date of the Act. In the light of all the foregoing, it is clear that the injunction decree cannot be interpreted to exclude from its scope defendant's interstate transactions.

■ In final analysis the central issue on this motion is not, as posed by defendant, the right of individuals affiliated with defendant to organize and operate a discount company in a non-fair trade state or even to ship from such a state into fair trade states. The essential question is whether Masters Mail Order House was organized, and whether the defendant's activities here in New York in connection with the sale and advertising of plaintiff's products from the Washington store were and are being utilized, as a means of circumventing and defeating this court's mandate of November 24, 1950. In other words, was a lawful activity used to achieve an illegal objective.

The decree is explicit in its prohibition and obviously defendant does not gain immunity by doing through indirection what it is forbidden to do directly.[3] If

2. The Schwegmann case was decided while the petition for certiorari was pending in the Wentling case. Shortly thereafter the Supreme Court granted certiorari and remanded the case for reconsideration in the light of its ruling in the Schwegmann case.

3. Leman v. Krentler-Arnold Hinge Last

Co., 284 U.S. 448, 451–452, 52 S.Ct. 238, 76 L.Ed. 389; Cassidy v. Puett Electrical Starting Gate Corp., 4 Cir., 182 F. 2d 604; Walling v. James V. Reuter, Inc., 321 U.S. 671, 674–675, 64 S.Ct. 826, 88 L.Ed. 1001; Hipp v. Buhl Optical Co., 1937, 282 Mich. 128, 275 N.W. 793; Bigelow v. R. K. O. Radio Pictures, 7

defendant has used Masters Mail Order House as an instrument through which to evade the decree, it cannot escape the consequences of flouting the decree because the Mail Order House happens to be a distinct corporation or that within proper bounds it may carry on its lawful activities.

It is, however, significant that Judge McGohey has recently had occasion to pass directly on the activities of Masters Mail Order House.[4] General Electric Company brought an action in this court for an injunction and damages, charging, among other things, that Masters Mail Order House offers for sale, sells and delivers its products to New York residents for less than the retail prices fixed in plaintiff's contracts made under the New York Fair Trade laws. Defendant moved for summary judgment on the grounds that there was no issue of material fact and that the complaint failed to state a claim on which relief can be granted. In support of this motion Masters Mail Order House argued, as does the defendant here, that it was merely conducting its mail order business from Washington and was not engaged in any activity in New York. Judge McGohey, in a comprehensive and instructive summary of fair trade legislation, rejected this contention and held that there were issues of fact as to whether Masters Mail Order House was advertising, offering for sale or selling in New York, and said:

"* * * It is sufficient here to say that, from its preamble and its terms, the Act[5] does not leave Masters of Washington free from the consequences of its acts done in New York in violation of New York's law."

It follows *a fortiori* that if the defendant is found to be using Masters Mail Order House to evade this court's injunction, the device of a mail order operation to attain its end will not immunize its conduct of its contemptuous nature. Nor is the defendant's contempt less so because committed after advance proclamation rather than furtively.

It follows that defendant is not absolved of the charge of contempt, as a matter of law, merely because Masters Mail Order House is the principal actor and conducts a mail order business from Washington, D. C. Hence, the petition for a contempt adjudication may not be dismissed.

On anxious reflection the court has, however, reluctantly reached the conclusion that the application cannot, in justice to the litigants, be determined on the papers submitted. Plaintiff prays for the imposition of a fine which will compensate it for damages suffered through defendant's sales at cut prices, including defendant's profits, and for an order authorizing plaintiff to make an audit of defendant's sales. The sales here in question are presumably those made to New York residents by Masters Mail Order House. It may or may not be true that the Mail Order House was organized as the alter ego of the defendant to frustrate the decree of this court. It is not inconceivable that it was formed to take advantage of the absence of a fair trade law in the District of Columbia, with the genuine purpose of conducting the enterprise within the limitations of the law. Even so, its sales to New York residents or some of such sales at any rate, might still be found to be in violation of the injunction. Obviously, if Masters Mail Order House was created for the purpose of evading the decree in this action, its contact with New York must be viewed differently than would be the case if it was formed as a lawful enterprise. The present papers do not sufficiently enlighten this basic issue to enable the court to reach an informed judgment on it. The consequences to defendant of a possible second contempt adjudication in this action

Cir., 170 F.2d 783; Aerovox Corporation v. Concourse Electric Co., 2 Cir., 90 F.2d 615.

4. General Electric Co. v. Masters Mail Order Co. of Washington, D. C., Inc., D.C.S.D.N.Y., 122 F.Supp. 797, 802.

5. McGuire Act, 15 U.S.C.A. § 45.

are indeed serious. Similarly a denial of this motion is fraught with serious results to plaintiff since it would breach its fair trade structure which has represented a basic policy with respect to the preservation of its good will and the value of its trade marks. Under the circumstances a full hearing should be had.

The court is confirmed in the view that this application should not be decided on papers by the circumstance that a like course was adopted in the earlier proceeding culminating in the contempt order of November 2, 1953. Then the ascertainment of the sales made was probably the chief problem. Now we have added the complicating factors which require a searching inquiry into motives. Moreover, whether a given sale to a New York resident was in defiance of the decree or was a bona fide transaction not participated in by defendant in any way, may involve inquiry into the origin and circumstances of each and every sale to New York residents unless all fall into a set pattern. The court finds no alternative to the appointment of a special master before whom such and kindred issues may be fully and expeditiously explored.

Settle order on notice.