REVERE CAMERA COMPANY

v.

MASTERS MAIL ORDER COMPANY OF WASHINGTON, D. C., Inc.

No. 7710.

United States District Court,
D. Maryland, C. D.

Feb. 23, 1955.

David P. Gordon, Eugene M. Feinblatt, Gordon & Feinblatt, Baltimore, Md., Jack I. Levy, Chicago, Ill., H. Thomas Austern, Harry L. Shniderman, James T. Haight, Washington, D. C., for plaintiff.

James Robert Miller, Silver Spring, Md., Thurmond Arnold (Arnold, Fortas & Porter), Washington, D. C., Jos. F. Ruggieri, Brooklyn, N. Y., for defendant.

CHESNUT, District Judge.

The jurisdiction of the court in this case is based on diversity of citizenship only. The plaintiff is a Delaware corporation with its principal business office in Illinois. It has established a so-called 'fair trade policy in accordance with the Maryland Fair Trade Act. The complaint alleges, among other things, that the defendant is acting contrary to the requirements of the Maryland Act in the sale of the plaintiff's branded goods at cut-rate prices, that is, lower than the scheduled re-sale prices as permitted by the plaintiff's established trade policy. The principal object of the suit is to enjoin the defendant from such alleged violations of the Maryland Fair Trade Act. Art. 83, §§ 102-110, Ann.Code of Md.1951.

The defendant is a corporation formed under the laws of Maryland. It has no place of business in the State of Maryland but does have a store in Washington, D. C., where some of the plaintiff's branded goods are sold. The complaint alleges that these sales are made in Maryland as a result of circular offers

advertising the plaintiff's goods for sale at less than the plaintiff's scheduled re-sale prices.

The principal point of the plaintiff's case is that the operation of the defendant's so-called mail order business from Washington, D. C., and resulting in sales to Maryland customers is in violation of the Maryland Fair Trade Act; but the complaint further alleges in connection with the defendant's mail order sales emanating from Washington that the defendant is a subsidiary of and wholly controlled by a large New York corporation known as Masters, Inc., and that the defendant either directly or indirectly through the New York corporation purchases plaintiff's branded products in New York or elsewhere in other so-called fair trade States at prices less that those established by the plaintiff for its products in accordance with the laws of such other States; and that in making said purchases at cut-rate prices the defendant induces and causes vendors to sell plaintiff's products at less than the established prices contrary to the laws of the States where the purchases are made; and that having succeeded in making such purchases the plaintiff's products are shipped to Washington for re-sale into Maryland and other fair trade States where the plaintiff's policy of maintenance of re-sale prices has been duly established in accordance with the law of such States; and the complaint alleges that this method of defendant's conduct of its business, and particularly the temporary storage in Washington for purposes of re-sale into fair trade States is a mere subterfuge to evade the laws of the States where the goods are purchased by the defendant for re-sale into Maryland and other fair trade States contrary to the laws of those States. The complaint also alleges in substance that the defendant's conduct of its business in the purchase and re-sale at cut prices of the plaintiff's products is in and of itself a form of unfair competition to the injury of the plaintiff's brands and trademarks and should be enjoined as unfair competition on general principles of equity jurisprudence.

Before filing an answer to the complaint the defendant filed a motion to have the case transferred for trial to the District Court of the United States for the District of Columbia. After hearing counsel this motion was overruled on December 10, 1954, in a written opinion and order, 127 F.Supp. 129, in which the general nature of the case was stated but in less detail as to the whole of the complaint than just above outlined.

The motions before the court at the present time are (1) defendant's motion to dismiss the complaint and (2) the plaintiff's motion for a temporary injunction. On the plaintiff's motion for a temporary injunction an order was signed requiring the defendant to show cause why the injunction should not be issued. In support of the plaintiff's motion numerous exhibits and affidavits were filed and the defendant has filed an elaborate memorandum of authorities in opposition to the plaintiff's motion for injunction, and also several affidavits in support of its position. But it will be noted that pending disposition of the defendant's motion to dismiss the complaint, no answer has yet been filed by the defendant. I note also from the record that the plaintiff has filed interrogatories to be answered by the defendant, and a request for admissions to which objections have been filed by the defendant. No hearing has been held on the matter of the interrogatories and requested admissions.

On the motions now before the court for dismissal of the complaint and for temporary injunction counsel have been heard in extended oral argument and have filed numerous extended briefs. As a result of consideration of the subject I have concluded that the motion to dismiss the complaint should be overruled *without prejudice,* and that the motion for a temporary injunction should be denied at this time. As the case must be tried on the facts alleged in the complaint, to the extent that they are denied

by the defendant's answer when filed, it will, of course, be necessary to have a trial of the case; and as the matter is not presently ready for final decision, it is unnecessary and perhaps inadvisable to enter into too much detail in the statements of my views explaining the reasons for denial of the two motions now submitted.

The principal ground relied on by the defendant for dismissal of the complaint is that the defendant has a perfect constitutional right to sell and deliver its merchandise from the District of Columbia to customers in Maryland. This right is based on the general proposition that there is entire freedom of commerce between the States except to the extent that it is limited or prohibited by an Act of Congress. The freedom of such interstate commerce was one of the important reasons for the formation of the Union and the adoption of the Federal Constitution which provided that interstate commerce should be regulated by Congress. And prior to the Sherman Anti-Trust Act of 1890, 15 U.S.C.A. §§ 1–8, 15 note, persons and corporations engaged in commerce could enter into agreements with respect to the terms and conditions on which they and their customers dealt with each other. Agreements between vendor and vendee with respect to maintenance of re-sale prices were therefore not unlawful in general until in 1911 it was held by the Supreme Court that re-sale price maintenance was contrary to the Sherman Anti-Trust Act. Dr. Miles Medical Co. v. Parke & Sons Co., 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502. Even after this decision there continued to be very substantial support of re-sale price maintenance and about 1931 some of the several States began to adopt so-called fair trade laws which in substance provided that agreements for re-sale price maintenance should be considered lawful and enforceable according to the State law. In all, 45 of the 48 States have enacted such fair trade laws which, for the most part, are uniform in text. Only Missouri, Texas and Vermont have not adopted a similar statute; and Congress has never passed such a statute for the District of Columbia. In quite recent years several of the States have by judicial decision vacated their fair trade statutes as unconstitutional in the respective States so holding. But in 1937, evidently in recognition of the almost nation-wide acceptance of the economic theory supporting re-sale price maintenance, Congress passed the Miller-Tydings Act, 15 U.S.C.A. § 1, which, shortly stated, provided that re-sale price maintenance agreements lawful in a particular State should not be regarded as a violation of the Sherman Anti-Trust Act; and the making of such agreements between a vendor in one State and a vendee in another State followed by shipments of goods from one State to the other should be exempted from the force of the Sherman Act and that such agreements could be validly enforced in accordance with the State laws after they had been received by the vendee in the particular State, and that the shipment of such goods from one State to the other under such agreements should not be contrary to laws affecting interstate commerce. The uniform fair trade statutes of the several States, or at least of most of the States including Maryland, also provide that when such a fair trade policy has been adopted and carried out by the distributor, it should be binding upon all retail vendors in the State whether they had individually and respectively signed such an agreement or not. The evident purpose of such law is to protect the good will of trade-mark or brand products of manufacturers against price cutting by retailers subject to the law of the State; provided further that the product of the vendor is in competition with similar merchandise of other vendors and that agreements with respect to re-sale price maintenance should not be on the "horizontal" level but only on the "vertical" level; and also subject to the proviso that the vendor of the trade-marked or branded article should exercise reasonable efforts to maintain his re-sale price schedule of which due notice has been given, by efforts to en-

force it in accordance with the law of the particular State.

However, in the case of Schwegmann Bros. v. Calvert Distillers Corp., 341 U.S. 384, 71 S.Ct. 745, 95 L.Ed. 1035, the Supreme Court held by a divided court that such re-sale price maintenance agreements between vendors in one State and vendees in another State were exempt from the operation of the Sherman Act by virtue of the Miller-Tydings Act only as against retail vendors in the particular State who had personally signed such re-sale maintenance contracts or agreements. And in the case of Sunbeam Corp. v. Wentling, 185 F.2d 903, the Court of Appeals for the Third Circuit had held that re-sales by retail merchants in a particular State having a fair trade law were not exempt from the Sherman Act if the re-sale was to a customer in another State because, in the opinion of the Court it was contrary to constitutional rights of freedom of interstate commerce. The Wentling case was decided before the announcement of the opinion of the Supreme Court in the Schwegmann case and was vacated, 341 U.S. 944, 71 S.Ct. 1012, 95 L.Ed. 1369, by the Supreme Court on application for certiorari because the re-sale had in the Wentling case been made by a vendee who had not personally signed the price maintenance contract. The views of the Court in the Wentling case with respect to re-sales to vendees in other States were not at the time considered by the Supreme Court. Shortly after these two cases, renewed efforts were made in Congress for the passage of another Act which was thought necessary to restate the exemption of re-sale price maintenance contracts, (as it was contended by some had been the intention of Congress in the Miller-Tydings Act) in particular States which had adopted fair trade laws, and to authorize enforcement of them against all, subject to the laws of the State whether signers or non-signers of the agreement and fair trade policy adopted by the vendors. In other words, the proponents of the new Act wished to clarify and in effect reverse by legislation the judicial decisions in the Schwegmann and Wentling cases. This effort successfully resulted in the enactment by Congress of the McGuire Act of 1952, 15 U.S.C.A. § 45(a).

Shortly after the passage of the McGuire Act this court had occasion to review the application of the Act to a factual situation where in Maryland a retail merchant signed a re-sale price maintenance agreement and had then violated its terms by selling at cut-rate prices merchandise in small part to vendees in Maryland but in larger amount to a vendee in Delaware which State also had a fair trade agreement similar to that of Maryland. Sunbeam Corp. v. MacMillan, D.C.Md., 110 F. Supp. 836. In that case the principal contention of the defendant was that the McGuire Act did not exempt from the operation of the Sherman Act a re-sale of goods from Maryland to another State. But this court held to the contrary and ordered an injunction against the defendant.

It is also to be noted that in the MacMillan case this court was not dealing with the situation presented by the instant case, that is, the aplication of the McGuire Act to goods shipped from a jurisdiction having no fair trade law into a State having such law. The contention of the defendant here in support of the motion to dismiss the complaint is that, by the language of the McGuire Act, Congress did not intend it to apply to sales made by a vendor in one State or Territory having no fair trade law with shipments of goods into another jurisdiction; and further that to find such an intention in the McGuire Act would be contrary to the constitutional principles of freedom of interstate commerce. To the contrary the plaintiff here contends that the McGuire Act was intended to subject goods shipped from a non fair trade jurisdiction into a fair trade State to the laws of the State into which they were shipped. And more particularly it is contended by the plaintiff that offers by mail, advertisement or circular by a vendor in a non fair

trade jurisdiction to sell goods at cut prices in a fair trade State is contrary to the effect of the McGuire Act; and more particularly is a violation of section 107 of Article 83 of the Maryland Act which provides:

"Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of Sections 102–110, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby."

In the MacMillan case the Maryland fair trade law in general and its validity and enforcement in several cases in the Maryland Court of Appeals was considered and reviewed. There was no occasion in that case to consider the applicability of section 107 to the factual situation presented in the instant case with respect to the sale of goods from Washington into Maryland. And I know of no Maryland judicial decision which deals with such a situation. In the absence of any expression by the Maryland Court of Appeals upon the subject, it at least would be a very doubtful conclusion that section 107 should be here applied to the instant situation as contended for by the plaintiff. Nor is it clear to me that the language of the McGuire Act does fairly support the plaintiff's contention in this respect.

The plaintiff seeks to apply the language of section 107 of the Maryland Act which forbids willfully and knowingly advertising, offering for sale or selling at cut prices, to the defendant's mail order business conducted from the District of Columbia into Maryland and other fair trade States. While the averments of the complaint do in very general language allege a violation of the Maryland law, I have failed to note any specific averment that defendant's goods sold into Maryland have been there held for re-sale either in Maryland or to other jurisdictions. In my view the prohibition of section 107 of the Maryland Act has, by virtue of the necessary nature of the subject matter, relation only to advertising or offering for sale or selling commodities which are to be *re-sold* after they have come into the State, whether re-sold in the State or out of the State. The validity of the whole of the Maryland Act is necessarily dependent upon the Miller-Tydings Act of 1937 as fortified and amplified by the McGuire Act of 1952; and it will be noted that the title of the McGuire Act is to amend the Federal Trade Commission Act with respect to *re-sale* prices when in accordance with the law of a particular State; and para. 2 of the McGuire Act states the exemption of fair trade agreements in terms of limitation as to the re-sale prices under particular State laws. In my opinion at this stage of the case and as now presented on the papers submitted on the motion before the court, the McGuire Act does not of itself relate to the subject matter of the sale of goods from a non fair trade jurisdiction into another jurisdiction either with or without sales consummated by mail order advertising from one jurisdiction to the other. Historically considered, the impact of the Miller-Tydings Act and the McGuire Act on the Sherman Act had the effect of removing from the operation of the Sherman Act re-sale price maintenance agreements when authorized by the law of a particular State. Or, in other words, Congress restored to the several States their power to regulate commerce within the State exempt from the prohibition of the Sherman Act, and Congress also exempted from the Sherman Act interstate commerce with respect to transactions either permitted or prohibited by the laws of the fair trade States respectively. The result is that the Sherman Act does not apply to interstate commerce as to shipments into or out of fair trade States in the carrying out of fair trade agreements. It is the law of the particular State which is to control in those situations.

The plaintiff's contention is that the language of para. 4 of the McGuire Act supports the proposition that mail order sales from Washington, D. C., into Maryland are contrary to the Maryland law. Para. 4 provides:

"(4) Neither the making of contracts or agreements as described in paragraph (2) of this subsection, nor the exercise or enforcement of any right or right of action as described in parapraph (3) of this subsection shall constitute an unlawful burden or restraint upon, or interference with, commerce."

The Committee Report to the House stated that paragraph 4 was intended in effect to overrule the opinion of the Third Circuit in the Wentling case, 185 F.2d 903, which had expressed the view that although the Miller-Tydings Act was effective to exempt intrastate sales in a fair trade State from the Sherman Act it did not operate to exempt re-sales from the State in interstate commerce.

Both the plaintiff and the defendant rely upon portions of the legislative history of the McGuire Act to support their respective contentions. There is extensive legislative history of the McGuire Act. As finally passed the Act came from the Committee on Interstate and Foreign Commerce of the House. At the same time there was another Bill pending before the Judiciary Committee of the House known as the Keogh Bill which differed very materially in its provisions from the McGuire Bill. The general purport of the Keogh Bill was to create a federal right of action in favor of any person damaged by violation of fair trade agreements within a fair trade State but excluded "advertisements for sale, offers for sale, or sales which originate from or are directed to or are completed within any State, Territory or the District of Columbia where such contracts or agreements as are described herein are not lawful by statute". If the Keogh Bill had been passed it would clearly enough have supported the defendant's contention with respect to mail order business from Washington into Maryland. There is also legislative history which may be considered to strongly support the defendant's contention as to the effect of the McGuire Act. It appears from the debates in the House that the precise situation involved in the instant case with respect to mail order advertisements from non fair trade jurisdictions into fair trade States was directly presented. Representative Cole of Kansas, a fair trade State, complained that the McGuire Act should be amended to specifically cover and prohibit mail order sales transactions from Missouri, a non fair trade State, into Kansas. On the other hand Representative Patman from Texas who was generally in favor of the McGuire Act, opposed Mr. Cole's amendment for the reason that it would prevent sales from Texas, a non fair trade State, into other States which had fair trade laws. I have also noted that the Sunbeam Corporation filed a suit in Missouri, a non fair trade State, to enjoin a defendant in Missouri from advertising sales at cut prices of its branded articles in fair trade States. This suit was dismissed by the Sunbeam Corporation after the Department of Justice had intervened and filed an elaborate brief in support of the contention that the McGuire Act did not apply to that situation. However, counsel for the Sunbeam Corporation in the pending case here, who also participated in the argument in the instant case, does contend that the McGuire Act should be considered to apply to the instant case. There is also some support for the construction of the McGuire Act contended for by the plaintiff in some of the remarks on the floor of the House and Senate by some members of Congress.

While the possible inferences from the debates on the floor of the House and the defeat of Mr. Cole's proposed amendment which would have applied to the instant case may seem significant, I think that in view of the disparity of views expressed the only safe course for judicial construction of the effect of the McGuire

Act is to take its language together with the Committee Report in favor of it, as controlling. And, as I have said, I do not find in the wording of the Act adequate support for the plaintiff's construction as to its effect in the instant case presented.

■ Therefore, if the only issue tendered by the averments of the complaint were the effect of the McGuire Act I would think the motion to dismiss the complaint should be granted. But the averments of the complaint, so far not answered by the defendant, are much broader in scope and effect than the single issue as to the application of the McGuire Act. The complaint alleges in general terms that the defendant has violated the Maryland Act. This seems to tender an issue of fact to be decided only after trial. In addition the complaint alleges that the defendant's whole activity in buying goods at cut prices in fair trade States and then temporarily storing them in Washington for re-sales into Maryland are only a subterfuge to evade the Maryland law. Still further the complaint alleges unfair competition based on general principles of equity jurisprudence in the alleged purchase of goods at cut prices in fair trade States, as particularly New York, by inducing vendors there subject to the New York fair trade law, to re-sell at cut prices and then indirectly offer such goods at cut prices by mail order advertisement for re-sale into Maryland and other fair trade States in violation of their fair trade laws. These averments tender issues on general principles of equity jurisprudence which are wider than the effect of the McGuire Act. They at least call for an answer from the defendant. For these reasons I have concluded that the motion to dismiss should be overruled. But as the questions presented on equitable grounds of unfair competition are at least novel in their application and as the effect of the McGuire Act plays such an important part in the whole of the plaintiff's case, I have like-wise concluded as of the present time that the motion to dismiss should be overruled *without prejudice.*

■ The remaining motion is that of the plaintiff for a temporary injunction. It is strongly urged by counsel for the plaintiff that this mail order business for sale at cut prices is in and of itself a very direct threat to the maintenance of re-sale prices and necessarily tends to injure the plaintiff's fair trade policy in Maryland and other fair trade States. Some few retail dealers selling the plaintiff's products have indicated by letters their disposition to discontinue handling the plaintiff's products in view of the threatened cut-rate prices from the defendant. There appears to have been only two or three instances in which sales have been shown to have been made in Maryland by the defendant from Washington in consequence of mail order business. On the other hand it may be noted that plaintiff's interrogatories have been objected to by the latter and such objections have not yet been presented to the court on a hearing. Nor does it yet appear to what extent the defendant handles the plaintiff's products. It may be very small indeed in proportion to the whole of the defendant's volume of business, and with little or negligible effect on the plaintiff's re-sale price maintenance policy.

Another consideration relevant to the plaintiff's motion is the apparently undisputed fact that the defendant in this case, a Maryland corporation, has, since the institution of this suit, been dissolved and the business taken over by a corporation newly formed under the recently liberalized provisions of the local law of the District of Columbia for corporations. As the defendant Maryland corporation has no place of business in Maryland and apparently has done no business in Maryland other than interstate business the only jurisdiction of the court in this case is on the simple and rather narrow ground that the defendant was incorporated here and there-

fore could be duly served with process. While it may be assumed that if it had proven the defendant has violated the Maryland law prior to its dissolution and reincorporation in the District of Columbia, it and its successor would be subject to the final orders of this court, there is some doubt whether an injunction based on purely past activities would be effective against future activities of the new District of Columbia corporation. In view of the novelty of the case as a whole and the uncertainty with respect to the amount of damage heretofore incurred and the liability, if any, therefor, I have concluded that the present posture of the case as a whole does not justify the extraordinary remedy of the issuance of a temporary injunction at the present time.

There are some cases which have considered and discussed some of the issues presented by the plaintiff's complaint, but I have found no one that involves the factual situation which we have here. See General Elec. Co. v. Masters Mail Order Co. of Washington, D. C., D.C. S.D.N.Y.1954, 122 F.Supp. 797; Sunbeam Corp. v. Masters, Inc., D.C.S.D. N.Y.1954, 124 F.Supp. 155; Sunbeam Corp. v. Payless Drug Stores, D.C.N.D. Cal.1953, 113 F.Supp. 31; Schwegmann Bros. Giant Super Markets v. Eli Lilly & Co., 5 Cir., 1953, 205 F.2d 788, certiorari denied, 1953, 346 U.S. 856, 74 S.Ct. 71, 98 L.Ed. 369; General Elec. Co. v. Masters, Inc., 1954, 307 N.Y. 229, 120 N.E.2d 802, appeal dismissed 348 U.S. 892, 75 S.Ct. 215; General Elec. Co. v. Packard Bamberger & Co., 1953, 14 N.J. 209, 102 A.2d 18.

For these reasons it is ordered this 23rd day of February, 1955, by the United States District Court for the District of Maryland that (1) the defendant's motion for dismissal of the complaint be and the same is hereby overruled *without prejudice* and (2) that the plaintiff's motion for the issuance of a temporary injunction be and the same is hereby *denied* at this time.