COLUMBIA RECORDS, INC., Appellant, *v.* SAM GOODY, Respondent.

First Department, June 20, 1951.

*Godfrey Goldmark* of counsel (*Ralph F. Colin* and *Ambrose Doskow* with him on the brief; *Rosenman Goldmark Colin & Kaye,* attorneys), for appellant.

*Leon G. Telsey* of counsel (*A. M. Lowenthal* with him on the brief; *Telsey, Lowenthal, Rothenberg & Mason,* attorneys), for respondent.

*Henry Cohen* of counsel (*Cohen & Bingham,* attorneys), for Decca Records, Inc., *amicus curiæ.*

Cohn, J. Plaintiff appeals from a judgment dismissing its complaint after a trial at Special Term before an Official Referee to whom were referred by stipulation for determination all issues involved.

The action was brought by plaintiff pursuant to the provisions of the Feld-Crawford Fair Trade Act of the State of New York (General Business Law, § 369-a *et seq.*), wherein plaintiff sought an injunction to permanently restrain defendant from advertising and selling plaintiff's trade-marked long playing phonograph records at prices below those set forth in fair trade contracts entered into by plaintiff with certain of its retailers.

Injunctive relief was denied to plaintiff upon the ground that plaintiff's records were not in " fair and open competition " with records of the " same general class produced by others " and upon the equitable grounds that plaintiff was barred by its " acts in derogation of its alleged rights under the trade mark " from invoking the protection of the statute and that it had discriminated unfairly against defendant.

Plaintiff is a manufacturer of phonograph records which bear its trade-mark " Columbia " on the face of each record. In accordance with the provisions of the Fair Trade Law (General Business Law, art. XXIV-A, § 369-a) Columbia entered into a price-fixing agreement with various retail dealers throughout the State of New York whereby minimum retail resale prices for certain of its records, commonly known as " LP " (long playing) records were established. The agreements became effective September 8, 1950. On or about September 1, 1950, plaintiff duly gave to defendant, as well as to other retailers, written notice of the price-fixing contracts and the minimum retail resale rates set forth therein.

There are about sixty-eight manufacturers of long playing records, among whom plaintiff is numbered. Many of the other companies engaged in the manufacture of long playing records employ the same media of advertising as the plaintiff. Competing manufacturers make records of each composition that

is in public demand. Though plaintiff has contracts with performing artists who record exclusively for it, some of those artists have also made records for competing companies.

Before 1948 plaintiff manufactured only one type of record, that is a shellac record operating at a turntable speed of seventy-eight revolutions per minute. In the summer of 1948 plaintiff began to manufacture and sell a record operating at a turntable speed of 33⅓ revolutions per minute, which was designated as a long playing or microgroove record. The new long playing record, made of vinylite, is unbreakable and contains on one record the total work or works that had formerly required between three and seven records. It is this long-playing record that Columbia has fair traded.

Plaintiff does not sell directly to retailers but employs distributors. In the New York area plaintiff's exclusive distributor is Times-Columbia Distributors, Inc.

When plaintiff first entered into Feld-Crawford contracts, it made them applicable only to the long playing 33⅓ r.p.m. records. Throughout the entire period from the date of the introduction of the long playing records by plaintiff in 1948 to and through the time of the trial of this action, which took place during the month of November, 1950, defendant continuously and openly advertised and sold such records at less than plaintiff's catalogue prices.

Defendant has been selling phonograph records for thirteen years and for all that time with plaintiff's knowledge, has consistently and openly sold them, including those of plaintiff's manufacture, at less than their list price. Defendant admits that underselling his competitors has always been an essential part of his business. He contends that the agreement on which Columbia bases this action is not a binding contract and he also contends that by its acts of acquiescence and condonation of his price-cutting activities prior to September 8, 1950, Columbia has abandoned and waived its rights and is estopped from asserting any derived from the provisions of the Feld-Crawford Act.

So far as pertinent, the provisions of the Fair Trade Law read as follows:

*General Business Law*

" § 369-a. *Price fixing of certain commodities permitted.* 1. No contract relating to the sale or resale of a commodity which bears, or the label or content of which bears, the trade mark, brand, or name of the producer or owner of such com-

modity and which is in fair and open competition with commodities of the same general class produced by others shall be deemed in violation of any law of the state of New York by reason of any of the following provisions which may be contained in such contracts: (a) That the buyer will not resell such commodity except at the price stipulated by the vendor;".

" § 369-b. *Unfair competition defined and made actionable.* Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provision of section three hundred sixty-nine-a, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby." (Added by L. 1940, ch. 195, § 3, eff. March 19, 1940.)

The Feld-Crawford Act by its terms applies only to commodities that are in fair and open competition with commodities of the same general class produced by others. The learned Referee for whose ability we have great respect, found that plaintiff's long playing records failed to meet this requirement. He ruled that the statute could be applied to phonograph records only if the industry was characterized by competition between recordings of the same composition made by the same artist. That construction, we think, is too restricted.

It is our view that plaintiff's long playing records are in fair and open competition with records of the same general class produced by others. As mentioned above, long playing records are being manufactured and sold by at least sixty-eight different companies. According to the testimony of plaintiff's president, competing companies use the same advertising media to reach customers in the same market and they compete in the sale of records of the same general class, such as symphonic records, classical soloists, and popular records. Many prominent artists, too, have made recordings for different companies, which recordings are now available to the public.

Two articles may be competing in the same general class although one or both have unique or distinctive characteristics which cannot be exactly reproduced by a competitor. Where there is competition in generally similar trade-marked articles of almost any description, such as articles of merchandise, drug products, liquor, and books, such products may be placed under Fair Trade contracts. A statute identical with our New York law has been held to apply to toothbrushes made of patented nylon because they were in fair and open competition with

brushes of other materials (*Weco Products Co.* v. *Mid-City Cut Rate Drug Stores*, 2 CCH, Trade Regulation Service, par. 7162 [Cal. Superior Ct., 1940]). It has likewise been held by the highest court of the State of Maryland that the statute of that State applies to copyrighted books (*Schill* v. *Remington Putnam Book Co.*, 179 Md. 83; *Hutzler Bros. Co.* v. *Remington Putnam Book Co.*, 186 Md. 210). Two of the leading decisions under the Feld-Crawford Act in this State involved perfume (*Bourjois Sales Corp.* v. *Dorfman*, 273 N. Y. 167; *Guerlain, Inc.* v. *Woolworth Co.*, 297 N. Y. 11).

In the circumstances it would appear that the finding to the effect that plaintiff's long playing records are not in fair and open competition with the records of the same general class produced by others so as to entitle plaintiff to the protection of the Fair Trade Law is not tenable.

Dismissal of the complaint was also based on two equitable grounds, the first of these being predicated upon four findings, as follows:

(1) Plaintiff's failure to resort to the statute for records bearing the trade-mark " Columbia " other than its 33⅓ r.p.m. long playing records.

(2) Plaintiff's contribution to advertisements offering shellac records for sale at less than list prices.

(3) Plaintiff's failure to establish minimum retail prices for its long playing records prior to September 8, 1950, despite the fact that it had knowledge of defendant's price cutting practices.

(4) Plaintiff's allowing its distributor to continue selling its records to defendant " down to the very day of the trial."

These facts were held to show that plaintiff's good will did not require the protection of the statute; that plaintiff had not invoked the statute to protect its good will but " merely as a device to fix prices ",— a purpose not within the legislative intent. They were also held to show that plaintiff had allowed the defendant to build up a good will through the sale of its records in past years at less than list prices and hence was estopped from invoking on September 1, 1950, its statutory rights against defendant.

·The other equitable ground for denying relief is that plaintiff had discriminated against defendant, in that its distributor, Times-Columbia, had refused defendant's requests for co-operative advertising allowances while granting such allowances to his principal competitors and in that defendant's large order which would have carried a special return privilege and extended

credit terms was rejected by Times-Columbia in September, 1950.

The finding that plaintiff was precluded by its prior conduct from enforcing its statutory rights is not warranted. Plaintiff is not barred from invoking the statute with respect to long playing records simply because it did not enter into Fair Trade contracts relating to its other records. The Fair Trade Act is wholly permissive and gives the owner of a trade-marked product the right to protect his price level, if he chooses to do so. Failure to establish retail prices for shellac records does not impair plaintiff's rights under the statute with respect to long playing records.

The fact that plaintiff contributed toward advertisements of shellac records at cut prices is immaterial and was erroneously given consideration.

Plaintiff's failure to establish minimum retail prices for its long playing records prior to September, 1950, did not deprive it of its right to relief when at that time it chose to avail itself of the statutory protection.

For two years prior to Columbia's entry into the Fair Trade contracts, it had been producing long playing records. We do not subscribe to the doctrine that the right to invoke the statute may be lost by abandonment, acquiescence or estoppel because of inaction prior to the making of the Fair Trade contracts. The Court of Appeals in an opinion by Judge FULD has said that the use of the trade-mark and the name of the producer is the sole condition necessary to render the statute applicable. (*Guerlain, Inc.,* v. *Woolworth Co.,* 297 N. Y. 11, 19, *supra.*) Indeed, the law is well settled that " Mere acquiescence or delay alone, not amounting to an estoppel, does not bar an action for infringement of a trade-mark or one based on unfair competition, and while acquiescence or delay may be used as a bar to recover for damages, it does not preclude the granting of injunctive relief. (*Menendez* v. *Holt,* 128 U. S. 514.) " (*Tiffany & Co.* v. *Tiffany Productions* [opinion by DORE, J.], 147 Misc. 679, 682, affd. 237 App. Div. 801, affd. 262 N. Y. 482.)

No defense of abandonment, acquiescence or estoppel was established. Defendant was neither misled nor lulled into security by plaintiff but quite the contrary. After direct notification of the fair trading of prices of the long playing records, defendant persisted in cutting prices of this commodity. Such conduct, in the circumstances, fully warranted injunctive relief to plaintiff (*Calamia* v. *Goldsmith Bros.,* 299 N. Y. 636). Plain-

tiff was under no obligation to try to prevent its distributors from supplying its records to defendant.

With respect to the second equitable ground upon which the complaint was dismissed, it suffices to say that plaintiff did not discriminate against defendant. The only acts of alleged discrimination were acts of the distributor, an independent contractor. Not only did the defendant fail to prove that those acts constituted unfair discrimination, but each of them was affirmatively justified by the evidence.

Defendant is not obliged to purchase a fair-traded commodity. The law is clear that a commodity plus the trade-mark which it bears as evidence of its origin and quality belongs to the producer. The good will in his commodity is a proper subject of legislation. If defendant desires to continue to deal in plaintiff's long playing records which are fair-traded, he must do so upon the terms imposed by plaintiff. The Referee has sought to engraft upon the statute certain limitations which the Legislature of this State had not seen fit to write into it, namely. the requirement that a manufacturer or producer invoking its aid must apply it to all commodities bearing the same trade-mark; that he do so as soon as the article is placed upon the market; and that he take steps to deprive the offending retailer of a supply of the commodity. There is no basis in law for thus delimiting the mandate of the statute. Any attempt by the court to impose these restrictions upon a producer or manufacturer would deprive him of the protection which the law gives to his fair-traded commodity.

In *Old Dearborn Co.* v. *Seagram-Distillers Corp.* (299 U. S. 183) the Supreme Court (pp. 193–194) said: "Appellants here acquired the commodity in question with full knowledge of the then-existing restriction in respect of price which the producer and wholesale dealer had imposed, and, of course, with presumptive if not actual knowledge of the law which authorized the restriction. Appellants were not obliged to buy; and their voluntary acquisition of the property with such knowledge carried with it, upon every principle of fair dealing, assent to the protective restriction, with consequent liability under § 2 of the law by which such acquisition was conditioned."

By law of this State, willfully and knowingly selling any commodity at less than the prices stipulated in any contract made pursuant to the statute is unfair competition. In *Bristol-Myers Co.* v. *Picker* (302 N. Y. 61, 70) FROESSEL, J., wrote: "The Fair Trade Law unqualifiedly provides that price cutting fair

trade articles in and of itself is unfair competition. We have heretofore recognized that the primary legislative aim is to protect the good will of the trade-mark owner, and that when a commodity which bears a brand name is resold for less than the minimum price specified in the fair trade contracts, ' such conduct ' is a ' violation ' of the plain mandate of the Fair Trade Act, and ' is properly restrained by injunctive relief ' (*Guerlain, Inc.* v. *Woolworth Co.*, 297 N. Y. 11, 17, 19). * * * The ' assault upon the good will ' is the injury or damage resulting from the unfair competition, and is actionable under the statute even though proof of specific money damages is not supplied; in other words, injury to good will, actual or threatened, lies at its base. In *Westcott Chuck Co.* v. *Oneida Nat. Chuck Co.* (199 N. Y. 247, 251) in an action to restrain unfair competition, we said in effect that even in an action at law proof of actual damage is necessary only to justify more than a nominal recovery. But this is an action in equity and does not require a showing of specific money damage to support an injunction * * *. To hold otherwise would defeat the purpose of the statute.''

Accordingly, the judgment dismissing the complaint should be reversed. However, we cannot on the record before us make a final disposition of the case since additional proof is necessary to determine to what extent, if any, this action is governed by the decision of the Supreme Court of the United States in *Schwegmann Bros.* v. *Calvert Distillers Corp.*, decided May 21, 1951 (341 U. S. 384). The cause is, therefore, remanded to the Special Term for reconsideration in the light of that decision and in accordance with the opinion herein. (Cf. *Sunbeam Corp.* v. *Wentling*, 341 U. S. 944.)

PECK, P. J., CALLAHAN, SHIENTAG and McCURN, JJ., concur.

Judgment dismissing the complaint unanimously reversed, with costs to the appellant to abide the event and the cause remanded to the Special Term for reconsideration and in accordance with the opinion herein. Settle order on notice.