EASTMAN KODAK COMPANY, Plaintiff, *v.* MORTON SIEGEL, Doing Business as TOWER PHOTO SHOP, Defendant.

Supreme Court, Special Term, New York County, January 14, 1955.

*Haliburton Fales, II,* for plaintiff.

*Howard L. Kuttner* and *Eugene L. Sugarman* for defendant.

MATTHEW M. LEVY, J.  It appears without dispute that the plaintiff is a long-established manufacturer of photographic equipment and supplies, that it is the owner of the trade-marks " Eastman ", " Kodak ", " Brownie " and " Hawkeye ", that it has expended large sums of money to advertise and promote its name, trade-marks and good will, and that it has entered into contracts with retail dealers in this State by the terms of which it has fixed minimum retail prices at which certain of its products might be sold.

These so-called fair-trade agreements were entered into by the plaintiff in pursuance of the Feld-Crawford Act (L. 1935, ch. 976, as amd. by L. 1938, ch. 14, re-enacted L. 1940, ch. 195) and contained in the General Business Law.  Subdivision 1 of section 369-a permits price fixing by contract of a " commodity which bears, or the label or content of which bears, the trade mark, brand, or name of the producer or owner of such commodity .and which is in fair and open competition with commodities of the same general class produced by others ".  Section 369-b .of the statute has been invoked by the plaintiff in this action to obtain an injunction against the defendant, a nonsigner of the fair trading agreement, who has received due notice thereof.  The defendant is a retailer doing business in New York City under the name of Tower Photo Shop.  The merchandise involved is a package assembled and advertised by the plaintiff as the " Brownie Hawkeye Flash Outfit ".  The matter comes before me on the plaintiff's application for an injunction during the pendency of the action.

The " Outfit " is packaged in a cardboard box on which appear the words " a Kodak Flash Outfit ", and a cover on which appears the legend " Made in Rochester, N. Y. by Eastman Kodak Company.  Trade Mark Reg. U. S. Pat. Off."  A sample of the package has been noted as an exhibit on this application.  It contains a number of individual articles — (1) a Brownie Hawkeye Camera, Flash Model; (2) a Kodalite Flasholder with Kodak Two-Way Flashguard; (3) eight No. 5 Photoflash Lamps; (4) two size C batteries; (5) two rolls V 620 film; and (6) a thirty-two-page booklet entitled " Snapshots With Your Brownie Hawkeye Camera Flash Model ".  The price fixed by the plaintiff for the " Outfit " is $13.65, for the camera separately $6.95, and for each roll of film $0.45.  The defendant has concededly sold the " Outfit " at a price less

than $13.65, but for an amount in excess of the fixed prices of the camera and two rolls of film together, which total $7.85.

It is alleged in the complaint and moving papers (and the " Retailer Fair Trade Agreement " and the sample exhibit submitted to the court appear to indicate) that the plaintiff is the manufacturer of the " Outfit " and that it is trade-marked by it. This the defendant denies. He points out that, of the six articles included in the package, only two (Nos. 1 and 5) are manufactured by the plaintiff and bear its trade-mark and are fair traded; two (Nos. 2 and 6) are the plaintiff's products bearing its trade-mark but are not fair traded; and that the remaining two articles (Nos. 3 and 4) are neither manufactured by the plaintiff nor bear its trade-mark nor are fair traded by it. These last two items (the photoflash lamps and the batteries) are manufactured by others than the plaintiff and the trade-marks of these others appear thereon. These articles have been included by plaintiff in the " Outfit " package without change in form, substance or intended use, and have themselves not been price fixed by their respective manufacturers.

It may be that the initial papers in support of the motion should have made clear the fact that the " Outfit " contained some component articles not manufactured by the plaintiff, not trade-marked by it, not fair traded by it, and that some items, bearing the trade-marks of other manufacturers, were not price fixed. But, as to these matters of fact, there is now no dispute, and, as I view the application on final submission, the problem goes deeper than mere pleading or presentation. The plaintiff says that it relies upon its being the " producer or owner " (General Business Law, § 369-a, subd. 1) of the package as a whole. The issue before me is whether the fair-trade statute or the plaintiff's fair-trade agreement warrants an injunction with respect to an assembled commodity of this type. No precedents in point have been cited by counsel and none has been found by the court.*

Let me take up first the matter of the agreement, notice of which was given by the plaintiff to the defendant and other retailers. The pertinent provisions of the agreement read in

---

* See Note in 36 Corn. L. Q. 781 (1951), entitled "Legislation: Business Regulation: State 'Fair Trade' Laws, An Appraisal: N. Y. General Business Law § 369a", wherein it is stated at page 788: "Combination package-sales through which the manufacturer hopes to increase his sales by combining a fair-traded product with another commodity are generally held to be an abandonment of the fair trade contract whenever the combination price fails to equal the price of the fair-traded product plus that of the tie-in commodity." Cases in New Jersey only are cited.

substance as follows: " Whereas Kodak [the plaintiff] is *the manufacturer of certain products* now or hereafter made subject to this Agreement (hereinafter called ' said Kodak products ') listed in the Schedule * * * attached hereto * * *, *which products are and will be distributed under the trademarks, brands, or trade names owned by Kodak* in fair, free, and open competition with commodities or products of the same general class produced or distributed by others ". (Italics supplied.) The " Retailer Fair Trade Agreement Schedule of Products and Minimum Prices " attached to the agreement lists under the heading of " Kodak Roll Film " the item, among others, of " Film No. 620 ", " Verichrome V ", at forty-five cents. Under the heading of " Brownie Cameras " are listed, among other items, " Brownie Hawkeye Camera, Flash Model, 2¼ x 2¼, $6.95 ", and " Brownie Hawkeye Flash Outfit (includes Brownie Hawkeye Camera, Flash Model; Kodalite Flasholder with Kodak 2-Way Flashguard; 8 No. 5 Photoflash Lamps; 2 Size C Batteries; 2 Rolls V 620 film; 32-page booklet ' Snapshots With Your Brownie Hawkeye Camera, Flash Model '), $13.65."

It may be, as claimed by the defendant, that the plaintiff's fair-trade agreement and schedule, by express language, were limited to the " Brownie Camera " which descriptively headed both the " Hawkeye Camera " itself and the " Brownie Hawkeye Flash Outfit ", among other cameras. And it may be, too, that if in fact the plaintiff has sought by the method of listing used here, to price fix the " Outfit " as a whole as well as the " Camera " and the " film " individually, it should have made clear to all — so that even he who runs could read — that it did not itself manufacture some of the packaged items and that it did not fair trade each of these separately, and that as to the articles produced by others they were branded but not price fixed by those others. That might well justify a denial of the injunction, at least *pendente lite*. But I do not want to rest my decision on these bases alone. To me the problem remains, and must be squarely faced, whether the fair-trade legislation here involved permits price fixing of the package as here assembled. And in seeking to arrive at a determination, we must keep in mind, in the language of the Court of Appeals in another connection, that this is not a case where the " form and character of the basic product is altered ", so that " a new article, possessing a completely different function, is created " — where there is " in fact and in effect, a new and different commodity " (*Guerlain, Inc.,* v. *Woolworth Co.,* 297 N. Y. 11, 17).

Under the common law, there was complete freedom of resale, and retail price fixing by the wholesaler was unenforcible (see as to constitutionality of the statute, *Bourjois Sales Corp.* v. *Dorfman,* 273 N. Y. 167). The Fair Trade Act, being in derogation of the common law, must be strictly construed — unless, perhaps, a lenient interpretation will effectuate its beneficent purpose rather than bring in its train results more harmful than the remedy sought to be achieved by its enactment. The recognized intent of the statute is to enable a manufacturer to protect his good will by insulating his commodity from the competitive vicissitudes of the market place (Corey, Fair Trade Pricing: A Reappraisal, 30 Harv. Bus. Rev., No. 5, p. 47 [1952]). But a *sine qua non* to effectuating that purpose is, is seems to me, that the producer must sell the commodity under his brand or trade-mark and to have it price fixed. In my view, it would frustrate that intent were protection of the statute afforded a manufacturer of a product (trade-marked and fair traded by him) who grouped with that article other items (branded but not fair traded by him) and then labelled the assembled package with the trade-mark in question. In my view, too, the function of fair-trade legislation would be aborted were the producer warranted in claiming protection of the statute for a package in which he has assembled other articles manufactured by others and themselves not fair traded and not bearing the producer's trade-mark. The provisions of the statute " are wholly inapplicable to unmarked goods " (*General Elec. Co.* v. *Masters, Inc.,* 307 N. Y. 229, 238).

Moreover, to enable the owner of a trade-mark to use his registered brand in connection with the sale of a package containing a number of component parts, some of which are produced or owned by the seller and carry his trade-mark, and others of which are not produced by him, do not carry his trade-mark and individually and independently are not fair traded, might facilitate a practice not at all within the meaning of the act and might result in unlimited vices in commerce and difficulties in law enforcement. In the end, the price-fixed tail might be permitted to wag the unbranded and non fair-traded dog. The result might be that the statute would protect not the trade-mark or the fair trade, but rather the unmarked and the unfair. It seems clear to me that the statute was intended to protect the fair trader, not the free loader. And the problem before me is not what the statute might provide, but rather what it does provide. If the Legislature intended to permit the manufacturer of one or two articles to brand, trade-mark and

price fix them, and with that as a peg to be able to include these articles in a package containing any number of other items — not themselves branded, trade-marked or price fixed — and then to price fix the whole package, the statute should clearly and unmistakably so provide.

It may be that even under the present legislation each package thus assembled should be considered on its own — with respect to the number of the articles, and the value and use of each of them — within the framework of the fair-trade agreement and of the facts. Even if that be so, sufficient has been presented to me in the instant case to compel the denial of the injunction *pendente lite,* and to relegate the plaintiff to the establishment of its case upon the trial. Under recognized principles of law, an injunction pending final determination should not be granted unless the right to it is clear. That is not the situation here.

Order signed, denying the present application.