Irving H. Saypol, J.
Plaintiff, a manufacturer of photographic equipment and supplies, brought this action for a permanent injunction pursuant to the so-called Feld-Crawford ‘‘ Fair Trade Law ’’ (General Business Law, §§ 369-a-369-e ; L. 1935, ch. 976, as amd., re-enacted by L. 1940, ch. 195, § 3). Applications for a preliminary injunction were previously denied (207 Misc. 283, Matthew M. Levy, J.; 207 Misc. 986, Steuer, J.).
The complaint alleges the existence, known to the defendant, of a fair-trade agreement with respect to the minimum retail resale prices of certain of the plaintiff’s products and the defendant’s sales thereof below such prices. The defendant, a nonsigner retailer of the agreement, in his amended answer *968 denied the allegation of the complaint that “ said commodities bear the plaintiff’s trade-marks, brands and names, and are in fair and open competition in this State with commodities of the same general class produced by others ” and also denied (although not pressed too vigorously) that he knowingly sold the plaintiff’s fair-traded products below the fair-trade prices. In addition, the amended answer set up the following affirmative defenses: (1) The plaintiff combined in one package or outfit its own trade-marked and fair-traded products with its own trade-marked but not individually fair-traded products and also with products trade-marked by other manufacturers but not fair traded; such practice it is claimed constitutes an abandonment of the plaintiff’s fair-trade agreement. (2) The plaintiff has not equitably enforced its fair-trade agreement and has unfairly discriminated between its franchised dealers and independent retailers such as the defendant to the detriment of the latter. (3) The plaintiff has franchised as an authorized retail dealer the Ritz Camera Centers which maintains stores not only in New York City but also in Washington, D. C., where there are no fair-trade laws; that the Ritz Washington store accepts mail orders and ships the plaintiff’s products to New York City at less than the fair-trade prices maintained in New York; that by permitting the Ritz Camera Stores to engage in such mailorder practices the plaintiff has abandoned its alleged fair-trade enforcement system. (4) Combining the plaintiff’s products with trade-marked products of other manufacturers in one outfit and designating ‘‘ the entire content of said package as a product of the plaintiff ” violate the Penal Law of New York.
The defendant did not testify at the trial nor did he call any witnesses. What was litigated was the broad and overall question of whether or not the plaintiff’s conduct or rather misconduct precludes equitable aid.
The issues litigated at the trial mainly resolved themselves into the following: (1) whether the plaintiff’s program of enforcing its fair-trade agreement was adequate, fair and equitable ; (2) whether the plaintiff’s dealings with the Ritz Camera Stores constituted an abandonment of its fair-trade enforcement policy; and (3) whether the sale of the outfits likewise constituted either (a) an abandonment of the plaintiff’s entire fair-trade agreement or (b) at least an activity not covered by the Fair Trade Law.
Before I dispose of the issues as I have stated them, I will consider briefly two incidental questions raised by the defendant. He urges firstly that the qualifying language of the statute purporting to limit applicability to a commodity ‘ ‘ in fair and open *969 competition with commodities of the same general class ” (General Business Law, § 369-a, subd. 1) is fatally vague and indefinite and, therefore, a denial of due process under the New York State Constitution (art. I, § 6). A similar objection under the due process clause of the Fourteenth Amendment of the Federal Constitution was overruled in Old Dearborn Co. v. Seagram Corp. (299 U. S. 183, 196-197; see Adams, Fair Trade & the Art of Prestidigitation, 65 Yale L. J., 196, 200, 207, n. 48). The defendant urges, however, that our Court of Appeals has not expressly passed upon this claim under the State Constitution. Even were this so, this court would follow the reasoning of the Old Dearborn case and apply it to the analogous provision of the State Constitution. As it is, when the constitutionality of the Fair Trade Law was recently reupheld by the Court of Appeals (General Elec. Co. v. Masters, Inc., 307 N. Y. 229, appeal dismissed for want of substantial Federal question, 348 U. S. 892), that court appeared to give its blanket approval to every facet of the Old Dearborn opinion. In referring to Bourjois Sales Corp. v. Dorfman (273 N. Y. 167), which overruled Doubleday, Doran & Co. v. Macy & Co. (269 N. Y. 272) on the basis of the Old Dearborn decision, Judge Froessel stated (307 N. Y. 229, 237): “ This time, relying on the Old Dearborn decision, we upheld the statute against claims that it violated the New York State Constitution ”. While of late several State courts have held nonsigner clauses invalid under their respective State constitutions (see, e.g., Union Carbide & Carbon Corp. v. White River Distrs., 224 Ark. 558; Cox v. General Elec. Co., 211 Ga. 286; McGraw Elec. Co. v. Lewis & Smith Drug Co., 159 Neb. 703 [entire law unconstitutional]), this State’s highest tribunal since the Bourjois Sales decision has consistently rejected any suggestion of disharmony in this field in the interpretation of analogous provisions of the Federal and State Constitutions. The constitutional objection is, therefore, overruled.
Secondly, the defendant urges that the plaintiff has failed to prove that its fair-traded products are in ‘‘ free and open competition ” with commodities of the same general class produced by others. The court finds that the evidence satisfies the statutory requirement, especially in view of the defendant’s failure to controvert the plaintiff’s evidence in this regard. The phrase “ free and open competition” has received a liberal interpretation in this State (Columbia Records v. Goody, 278 App. Div. 401; General Elec. Co. v. S. Klein-on-the-Sguare, 121 N. Y. S. 2d 37, 49-50); and elsewhere it has been held that the fact that a commodity is copyrighted or patented does not pre *970 elude the establishment of a fair-trade price (Glen Raven Knitting Mills v. Sanson Hosiery Mills, 189 F. 2d 845, 854; Schill v. Remington Putnam Book Co., 179 Md. 83; Lilly & Co. v. Saunders, 216 N. C. 163; 1 Callmann on Unfair Competition & Trade Marks [2d ed.], 456-460). The only reported contrary result involved “ color ” film manufactured exclusively by this plaintiff, the court declaring that such film was not in free and open competition with the ordinary “black and white” film (Eastman Kodak Co. v. Federal Trade Comm., 158 F. 2d 592, cert, denied 330 U. S. 828; cf. Eastman Kodak Co. v. Schwartz, 133 N. Y. S. 2d 908, 914).* In the light of these authorities and on the evidence, the court overrules the objection that the plaintiff’s products are not in free and open competition within the meaning of the Fair Trade Law.
Much of the evidence adduced at the trial related to the plaintiff’s enforcement activities with respect to its fair-trade agreement. Upon the basis of such evidence the defendant strongly urges that the plaintiff’s program and efforts of enforcement were inadequate, ineffective and discriminatory and the defendant does not hesitate to characterize such efforts as ‘‘ easy-chair ” enforcement.
The evidence concerning the plaintiff’s enforcement procedure and activities in Manhattan and The Bronx may be summarized as follows: The responsibility for enforcing the plaintiff’s fair-trade program rested primarily with an official of its sales department in Roehester, New York, who devoted but part of his time to such work. He was assisted by two stenographers. The plaintiff’s sales manager for the northeastern sales division in New York City chose a shopping service whose employees, engaging in surveillance, would visit various retail stores to find out if there were any violations of the plaintiff’s fair-trade agreement. If a violation were found, a form letter would be sent to the violating retailer advising him to desist. Such a retailer would again be shopped and if on the second visit, another violation were discovered, the plaintiff would send a registered letter. Other shoppings would be made and only if three successive violations were found would legal action be undertaken.
It appears that in the 15 months before trial the plaintiff caused 4,750 shoppings to be made in 640 stores located in Manhattan and The Bronx. Of these, 3,908 shoppings in 340 *971 stores showed no violations. Of the 300 stores showing some violations, 259 seemingly desisted as a result of correspondence. Of the remaining 41 stores, the plaintiff had obtained injunctions against 24 and had actions pending against 8 others. Further shoppings of the remaining 9 stores were being made. Both franchised dealers and independent retailers were included in these shopping activities.
Since the Legislature in enacting the Fair Trade Law has set no standards for guidance of an enforcement policy in this field and has made no express provision suggesting defenses to an enforcement action, the courts have found it necessary to establish standards with concomitant defenses, primarily equitable in nature and not mechanical in their application, to effectuate the policy of the law (see General Elec. Co. v. Macy & Co., 199 Misc. 87, 92, voluntary dismissal granted and appeal dismissed as academic, 278 App. Div. 939, 940; General Elec. Co. v. 8. Klein-on-the-Square, 121 N. Y. S. 2d 37, 54, supra; Gillette Safety Razor Co. v. Green, 167 Misc. 251, 252, affd. 258 App. Div. 723; Fulda, Resale Price Maintenance, 21 U. of Chicago L. Rev. 175, 202; 6 Syracuse L. Rev. 327, 332; 36 Corn. L. Q. 781, 787; 2 Buffalo L. Rev. 280, 294; Discriminatory Enforcement of Fair Trade Prices; The Problems & Remedies under State & Federal Laws, 65 Yale L. J. 235, pp. 239-240, n. 26. Of the cases cited, at least in that of Westinghouse Elec. Corp. v. Charles Appliances, 1954 Trade Cases, par. 67685, involving the so-called “ club-plan ”, although a preliminary injunction was refused [Nathan, J.], after trial judgment went for the plaintiff [Coleman, J.], Supreme Court New York, N. Y. County, Index No. 12366 —1953). In General Elec. Co. v. Macy & Co. (supra) four requisites for enforcement of price maintenance agreements were enumerated: (1) there must be a fair-trade price structure which has a real and not merely a paper or illusory existence; (2) there must be a reasonable and diligent enforcement of the existing fair-trade prices; (3) the relief sought must be for the sole purpose of enforcement and not for any ulterior purposes; (4) the plaintiff must not have indulged in any practices offensive to the conscience of the court.
The court finds that the plaintiff’s enforcement program and activities are adequate, diligent, consistent and nondiscriminatory. There is and should be no requirement that the plaintiff must establish and maintain a separate espionage section in charge of a full-time official; nor is the plaintiff’s practice of requiring three consecutive violations before court action unrealistic, unfair or discriminatory (see, in general, a well-considered note, Operation of Fair-Trade Programs, 69 Harv. L. Rev.
*972 316, 335-339). The plaintiff’s enforcement procedures appear as satisfactory and adequate as those previously sanctioned by the courts in affording injunctive relief (cf., eg., Calamia v. Goldsmith Bros., 82 N. Y. S. 2d 277, affd. 274 App. Div. 884, affd. 299 N. Y. 636; General Elec. Co. v. S. Klein-on-the-Square, supra; General Elec. Co. v. Macy & Co., supra; Lionel Corp. v. Klein, 114 A. 2d 652 [Del.]). Moreover, precedent for approval of this very plaintiff’s enforcement activities as fair, diligent and nondiscriminatory is found in Eastman Kodak Co. v. Schwarts (133 N. Y. S. 2d 908, 913, supra) wherein it was stated: ‘‘ There was no waiver or abandonment of plaintiff’s rights; as a matter of fact, plaintiff was most diligent in asserting its rights.” Accordingly, this defense of only token and inequitable enforcement by the plaintiff is overruled.
The second defense posits the query whether the plaintiff’s dealings with the Ritz Camera Centers constitute an abandonment of its entire fair-trade enforcement system. Ritz maintains stores both in New York City and Washington, D. C., the latter a non controlled trade jurisdiction. The Washington outlet, franchised by the plaintiff as an authorized retail dealer, advertises in nationally circulated publications, accepts mail orders and ships the plaintiff’s products to fair-trade localities at prices below established local fair-trade prices.
When Ritz, a short while before this suit was commenced, opened a New York store only a few blocks away from the defendant’s, it was granted a dealership by the plaintiff which had refused a similar franchise to the defendant on the ground that there was an adequate number of authorized dealers in the vicinity.
The plaintiff’s sales manager in charge of its New York office testified that in his opinion Ritz’s mail-order business had no substantial effect upon the New York market. The owner of the Ritz stores testified that during the 11 months preceding the trial the Washington mail-order house had shipped only about $260 worth of commodities to addresses in Manhattan and The Bronx and only an additional $1,000 worth elsewhere in this State.
This defense was raised upon the second application by the plaintiff for a preliminary injunction. Justice Steuer denied the application with the folio-wing observation (207 Misc. 986, 989): “ Defendant argues that it will be simple and practicably undetectable for this concern [Ritz] to refer New York customers to the Washington store advising them to purchase by mail at reduced prices. And apparently it would be. Of *973 course the question is not how the business might be conducted, but how it is. Advertising of the Ritz Camera Centers has been submitted. Very plainly this suggests to the prospective customer that if he wishes to buy on credit he can deal with the store in his own city; if he is willing to pay cash with his order he can get the article at a reduced price by mailing the order to Washington. In this way the whole fair-trade structure could be undermined and the bulk of the retail trade channeled into non-fair-trade areas. To grant an agency or a retail franchise to an organization whose business is organized along such lines is doubtlessly perfectly legal. But whether it is not also such a consent to and participation in an arrangement which will so weaken the enforcement of a fair-trade agreement as to evince a willingness to abandon it is a close factual question. Its resolution must await the trial.”
In view of the evidence adduced concerning the minimal extent of the mail-order business done in New York by the Ritz Washington store, it would be sufficient to overrule the defense on the ground that such mail-order sales have had no appreciable effect upon the plaintiff’s enforcement policy in New York and upon the application of the principle de minimis non curat lex. However, because of the increasing general importance of the subject of interstate mail-order sales where the seller is located in a non-fair-trade State and sells to a buyer in a fair-trade State (see, generally, Cook, Continuing Fair Trade Battle, 29 St. John’s L. Rev., 66, 82; 22 U. of Chicago L. Rev. 525; 43 Georgetown L. J. 258; 30 Indiana L. J. 502), some additional comment and reference might prove helpful.
In Schwegmann Bros. v. Calvert Corp. (341 U. S. 384) the Supreme Court construed the Miller-Tydings amendment to the Sherman Anti-Trust Act (U. S. Code, tit. 15, § 1) as not covering nonsigner provisions of a State fair-trade law where interstate commerce was involved (see Rahl, Resale Price Maintenance, State Action, and the Antitrust Laws: Effect of Schwegman Brothers v. Calvert Distillers Corp., 46 Ill. L. Rev. 349). In Sunbeam Corp. v. Wentling (185 F. 2d 903, judgment vacated in light of Schwegmann decision, 341 U. S. 944, opinion on remand, 192 F. 2d 7) the court held that a State fair-trade statute should be construed to apply only to intrastate commerce and could not be enforced against a nonsigning local mail-order house insofar as interstate sales were concerned. Thereafter, the Congress enacted the McGuire Act (U. S. Code, tit. 15, § 45) which “ exempts from the Federal antitrust laws fair trade agreements made pursuant to existing or future State laws. *974 and permits their enforcement against nonsigners as well as signers who are engaged in interstate commerce ” (General Elec. Co. v. Masters, Inc, 307 N. Y. 229, 239, supra).
Whether or not the McGuire Act prevents sales by a mail-order house located in a nonfair-trade jurisdiction to a buyer in a fair-trade State still awaits definitive solution. Likewise unsettled is the question whether enforcement must be limited constitutionally to actions against violators located in fair-trade States. The few cases and commentators discussing the problems have expressed divergent views (cf. General Elec. Co. v. Masters Mail Order Co., 122 F. Supp. 797; Sunbeam Corp. v. Masters, Inc., 124 F. Supp. 155; Revere Camera Co. v. Masters Mail Order Co., 128 F. Supp. 457; 43 Georgetown L. J. 258; 30 Indiana L. J. 502; 22 U. of Chicago L. Rev. 525).
In the General Electric case (122 F. Supp. 797, supra), the defendant, incorporated in Maryland in March, 1954, had its principal place of business in Washington, D. C. It was an affiliate of Masters, Inc., a New York corporation, which the plaintiff had enjoined from violating the New York Fair Trade Law. The defendant circularized New York residents and its mail-order blanks were kept on hand at Masters in New York. The plaintiff sought injunctive relief on two grounds: (1) the defendant unlawfully sold and delivered the plaintiff’s products in New York for less than the fair-trade prices; (2) the defendant’s method of doing business maliciously interfered with the plaintiff’s fair-trade program. The plaintiff applied for a preliminary injunction while the defendant sought dismissal of the complaint for lack of jurisdiction and summary judgment. The plaintiff’s application was denied. After holding that there was sufficient basis for declaring that the defendant foreign corporation was doing business in New York for purposes of jurisdiction, Judge McGohey denied the motion for summary judgment on the ground that there were issues of fact as to whether the defendant was advertising in New York, as to whether title passed in New York and as to whether the defendant, either directly or through Masters of New York, was offering to sell here. In disposing of the defendant’s claims that the plaintiff was attempting to apply the New York act extraterritorially to the defendant’s activities in the District of Columbia, Judge McGohey stated that the plaintiff was complaining about acts actually committed in New York. Under such circumstances, “ [i]t is sufficient here to say that, from its preamble and its terms, the [McGuire] Act does not leave Masters of Washington free from the consequences of its acts *975 done in New York in violation of New York’s law” (p. 802). Decision on the merits is pending.
In the Sunbeam case (124 F. Supp. 155, supra) the plaintiff sought a contempt order against the defendant Masters, the New York corporation, for violating the injunctive provisions of a prior consent decree. The stated ground was the defendant’s organization of the Washington mail-order house, the activities of which were likewise the basis of the General Electric action (122 F. Supp. 797, supra). Judge Weinfeud posed the basic issue as (p. 158) “ whether Masters Mail Order House was organized, and whether the defendant’s activities here in New York in connection with the sale and advertising of plaintiff’s products from the Washington store were and are being utilized, as a means of circumventing and defeating this court’s mandate of November 24, 1950. In other words, was a lawful activity used to achieve an illegal objective.” Approval was noted of the General Electric opinion (122 F. Supp. 797, supra). On the basic issue of contempt, the disposition still remains open for lack of a complete submission by the parties.
In the Revere Camera case (128 F. Supp. 155, supra) the plaintiff in the United States District in Maryland sought to enjoin the defendant mail-order house (the same defendant as in the General Electric case, supra) from selling the plaintiff’s goods in Maryland at lower than the fair-trade prices established in Maryland. It appeared that since the institution of the suit the defendant had given up its Maryland charter and reincorporated in the District of Columbia, Chesnut, J., denied a motion for a temporary injunction and also overruled a motion for dismissal of the complaint without prejudice. With reference to the applicability of the McGuire Act, the court said (p. 462): “In my opinion at this stage of the ease and as now presented on the papers submitted on the motion before the court, the McGuire Act does not of itself relate to the subject matter of the sale of goods from a non fair trade jurisdiction into another jurisdiction either with or without sales consummated by mail order advertising from one jurisdiction to the other.”
In addition to the presence of seemingly contradicting views as to whether the McGuire Act covers sales from uncontrolled trade areas to fair-trade States, the plaintiff urges that it is questionable whether under the present circumstances it could lawfully refuse to sell to the Ritz Camera Centers because of its Washington mail-order activities without violating the antitrust laws. In the General Electric-Macy case (199 Misc. 87, supra) the court *976 suggested that it might be unlawful for the manufacturer to enter into agreements with distributors to cut off fair-trade-price violators (p. 95). It is arguable that a different conclusion might be reached in a situation expressly covered by the McGuire Act where the manufacturer has been selling directly to a retailer who has violated the minimum resale price (see Adams, Resale Price Maintenance: Fact & Fancy, 64 Yale L. J. 967, 978-984; Barber, Refusals to Deal Under the Federal Antitrust Laws, 103 U. of Pa. L. Rev. 847, 851-857, especially 856, n. 40; 69 Harv. L. Rev. 316, 347; 61 Yale L. J. 381, 398-401). In the face of the present uncertainties, the plaintiff should not be required to assume the risk of refusing to sell to the Ritz Washington store. As previously stated, the court overrules the defense based upon the Ritz activities.
The defendant claims further that the plaintiff, by attempting to fair-trade outfits or combination kits, has abandoned its fair-trade contract at least as regards any article in the outfit when individually sold. The interposition of this defense was deemed of sufficient importance to warrant the denial of a preliminary injunction (207 Misc. 283, supra; 207 Misc. 986, supra).
The plaintiff established a fair-trade price of $13.65 on an outfit known as the “ Brownie Hawkeye Flash Outfit ”. Each outfit, packaged in a cardboard box, contained its trade-marked camera and two rolls of its trade-marked film, individually fair traded by the plaintiff for $6.95 and $.45 respectively, its flash holder and flashguard and an instruction booklet trade-marked but not separately fair traded by the plaintiff, and unidentified photoflash lamps and also batteries trade-marked by other manufacturers but not fair traded by them. In other words, while the complete outfit bore a fair-trade price of $13.65, the minimum price on the two fair-trade items, i.e., the camera and the two rolls of film, together totalled $7.85.
The initial question to be considered is whether an outfit or any combination of separate items sold as a unit is a “commodity” within the meaning and protection of the Fair Trade Law (General Business Law, § 369-a, subd. 1). While the statute uses the word “commodity” only in the singular, it seems immaterial that a group of separate items is the subject of sale provided they are sold as a unit in an outfit, combination, package, etc., and as a unit are in free and open competition with similar outfits. I have already noted that the phrase “ free and open competition ” occurring in the same sentence of the statute has been liberally construed (Columbia Records v. Goody, 278 App. Div. 401, supra), and there appears no sound reason for a restrictive interpretation of “ commodity ” (cf. *977 Mallinson Fabrics Corp. v. Macy & Co., 171 Misc. 875, 877; General Construction Law, § 35). It is among other things the nature of the package and of its components rather than the mere fact that more than one separate item is involved which should primarily determine coverage under the statute.
What then are the factors which should determine whether a particular outfit, combination or package containing several products sold as a unit should be within the coverage of the Fair Trade Law? One can readily perceive many possible variations in the make-up of a package containing two or more items sold as a unit: e.g., (1) the package may consist solely of two or more identical trade-marked and fair-traded items to be fair traded for less than the aggregate price of the items if sold separately and independently; or (2) it may consist of two or more different trade-marked and fair-traded articles of the same manufacturer sold as a unit at less than the sum of the fair-traded prices fixed for each individual item; or (3) it may consist of two or more different trade-marked and individually fair-traded articles produced by different manufacturers; or (4) it may consist of trade-marked products of different manufacturers, not all of which are fair traded when sold separately and perhaps include unmarked goods; or (5) it may consist of different trade-marked products of the same manufacturer, not all of which are fair traded when sold separately. The “Brownie Hawkeye Flash Outfit ” under consideration involved some components trade-marked and fair traded by the plaintiff, some trade-marked by it but not individually fair traded and some items trade-marked by others but not fair traded and the unmarked flashlamps.
Surprisingly enough, even though fair-trade laws have been in effect more than a score of years, very little authority, even tangential, is found concerning combination sales in general. In an early New Jersey case, a Vice-Chancellor held that where a manufacturer permitted its fair-traded razor to be packed in a carton with a tube of shaving cream produced by another manufacturer who sold the combination without any price restriction, the razor manufacturer had abandoned its price structure. Neither manufacturer could establish a fair-trade price on the combined package ‘‘ because the statute does not apply to such situation ” (apparently a reference to illegal horizontal price maintenance) (Magazine Repeating Razor Co. v. Weissbard, 125 N. J. Eq. 593). In subsequent cases the same Justice denied preliminary injunctions on the theory of abandonment where combination packages, consisting of two identical fair-traded articles or of two different fair-traded articles, were *978 offered by the producer at a price less than the aggregate price of the articles if sold separately and independent of the combinar tion (Bathasweet Corp. v. Weissbard, 128 N. J. Eq. 135; Frank Fischer Merchandising Corp. v. Rits Drug Co., 129 N. J. Eq. 105).
A contrary result as regards combination package sales of fair-traded products of the same manufacturer was recently reached under the Tennessee Fair Trade Act (Colgate-Palmolive Co. v. Hogue & Knott Super Market, C.C.H. Trade Reg. Rep., § 67, 989 [D.C.W.D. Tenn., Feb. 25,1955]; see, also, Weco Products Co. v. Mid-City Cut Rate Drug Stores [Cal. Super. Ct.], 2 C.C.H. Trade Reg. Rep., § 10,044 [8th ed. 1941], where both fair-traded and other products were combined, the court stressing the limited time during which the special sales were made). And in the second application for a preliminary injunction herein (207 Misc. 986, 988, supra), Justice Steuer. stated: “ It would seem that an abandonment could only be spelled out if plaintiff is permitting or consenting to an arrangement whereby the article [the camera sold separately] can be sold in reality below the fair-trade contract price. In this connection no objection can be seen to combining articles in a single offer providing all of them are products of the seller’s manufacturer, trademarked by him and meet the requirements of being in free competition. The fact that the fair-trade price for the combination of articles is less than the total of the fair-trade prices for the articles individually is not significant.”
But, in denying the first motion for a preliminary injunction to restrain the sale of the “ Brownie Hawkeye Flash Outfit ” below the fair-trade price of $13.65, Justice Matthew M. Lew expressed the view (207 Misc. 283, 288, supra) that “ it would frustrate that intent were protection of the statute afforded a manufacturer of a product (trade-marked and fair traded by him) who grouped with that article other items (branded but not fair traded by him) and then labelled the assembled package with the trade-mark in question. In my view, too, the function of fair-trade legislation would be aborted were the producer warranted in claiming protection of the statute for a package in which he has assembled other articles manufactured by others and themselves not fair traded and not bearing the producer’s trade-mark.” Reference was made to General Elec. Co. v. Masters, Inc., 307 N. Y. 229, supra, appeal dismissed for want of substantial Federal question, 348 U. S. 892, supra, where the court said (pp. 238-239): “ Its [the statute’s] provisions are wholly inapplicable to unmarked goods. As to marked goods, it merely permits a manufacturer, whose trade-mark or brand name may represent a large advertising investment and *979 a carefully nurtured good will, to prevent retailers, over whom he would otherwise have little control, from seriously impairing the value of that trade-mark and good will by reselling his identified products at unreasonably low prices.”
I conclude that on the particular facts in this case wherein the combination package consists of some different trademarked products of the same manufacturer, not all of which are fair traded when sold separately (variation 5, supra), the manufacturer may not, as regards the package have the protection afforded by the Fair Trade Law. If the manufacturer does not see fit to establish a fair-trade price on each component when sold separately and independently — indicating insufficient purpose in maintaining his price structure to protect the good will associated with his brand name — the courts should not be zealous to afford protection for such a package. Since the outfit involved herein contained at least one non-fair-traded item manufactured by the plaintiff and often sold separately, namely, the flash holder (the instruction booklet need not now be considered since, although it bears the legend “ 50$ ” on its cover, it is not sold apart from the outfit), on this narrow ground alone the plaintiff is not entitled to fair trade the outfit.
While not necessary to this decision, the court notes its view that combination sales of identical or different fair-traded products of the same manufacturer at less than the sum of the fair-trade prices fixed for each individual item should be protectable under the Fair Trade Law (variations 1 and 2, supra).
Since the court holds that the inclusion of the non-fair-traded flash holder puts the instant outfit beyond the pale of the statute, its views concerning the third and fourth variations set forth above are not essential for the disposition of this suit. It might serve some useful purpose, however, if the court were to comment briefly thereon. Where the package consists of two or more different trade-marked and individually fair-traded articles produced by different manufacturers (variation 3, supra), neither manufacturer should be allowed to fair trade the combination. The possibility of thus making a horizontal price maintenance structure by agreement among manufacturers becomes apparent. That is an activity deemed illegal and clearly outside the coverage of the fair-trade laws (cf. Magazine Repeating Razor Co. v. Weissbard, 125 N. J. Eq. 593, supra).
Where the package contains items like the photo-flash lamps and batteries in the present outfit, if trade-marked by other manufacturers but not fair traded when sold separately or if unmarked (variation 4, supra), a conclusion is more difficult to *980 reach. The present outfit is packaged in a yellow cardboard box on which appear the words “ a Kodak Flash Outfit ”, and a cover bearing on two sides the legend ‘‘ Made in Rochester, N. Y., U. S. A. by Eastman Kodak Company. Trade Mark Reg. U. S. Pat. Off.”
The defendant maintains that since the outfit contains lamps and batteries trade-marked by other manufacturers, the above legend constitutes a misrepresentation and such designation as of the plaintiff’s manufacture violates the Penal Law of this State (Penal Law, § 2354). The plaintiff, on the other hand, urges that the functions of a trade-mark have been so expanded that they now embrace those of guaranteeing or warranting everything in the overall combination package, even items not manufactured by it.
My erudite colleague, Justice Levy, in denying a preliminary injunction, expressed a marked preference for the position that the inclusion of products of other manufacturers in the assembled package precluded the fair trading of the combination (207 Misc. 283, 289, supra). He recognized, however, that “ It may be even under the present legislation each package thus assembled should be considered on its own — with respect to the number of the articles, and the value and use of each of them —within the framework of the fair-trade agreement and of the facts. ’’
The court inclines to the suggested alternative that the nature of the particular outfit, combination or package and of its components should be determinative. Consent then would eliminate question of trade-mark transgression. Products such as radios, television sets and particularly automobiles which are usually of operating components as distinguished from accessories manufactured by others than the one whose trade-mark is applied to the overall product, would then seem to be within the scope of the fair-trade laws. While such products might be considered matter of integration as distinguished from that of assembly of a package, the difference insofar as items manufactured by others than the manufacturer is concerned would seem to be a matter of degree rather than kind. To the buyer of the radio or television set, the name on the vacuum tube or condenser or resistor is inconsequential. The need for protection of such components seems remote. Except as they may be incorporated within the set, they are of no value to that consumer. But the battery or flash bulb has a different and auxiliary utility. The name of the manufacturer of the flash lamp or the battery in the instant outfit might or might not be deemed of little significance to the buyer of the outfit (see 69 *981 Harv. L. Rev. 385). Yet when needed afterwards as an operating accessory, its character for fair trading would be of a different complexion. While the court overrules the defense that the plaintiff has violated the Penal Law in affixing the quoted legend on the cover of the outfit, it feels that under some circumstances the Fair Trade Law should encompass an outfit or combination containing items of different manufacture although some are not fair traded. That must await the actual state of facts for decision. The best solution would be by legislation. The innumerable and diversified possibilities defy description and consideration, truly a Pandora’s box best forced and kept shut. If it be said that by denying protection here a device for evasion may be envisioned by selling all the components at so low a price as to defeat the price of the controlled item — the facts of the particular case will be determinative as the occasion arises.
The court has considered the other contentions raised by the parties but finds them without merit. Decision heretofore reserved on motions are disposed of accordingly.
The plaintiff is entitled to judgment as indicated in the foregoing decision which is that required by the Civil Practice Act. Settle judgment.

 As to color film, it appears that this plaintiff pursuant to a decree entered on its consent, is prohibited from entering such products into the area of fair trade for at least eight years (C. C. H., 1954 Trade Cases, par. 67920, p. 70006).